ESTATE OF THOMAS G. SLATER, DECEASED, THOMAS G. SLATER, JR., AND ROBERT R. SLATER, COEXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7844-88.        Filed October 30, 1989.

*William L. S. Rowe,* for the petitioner.
*Deborah C. Stanley,* for the respondent.

OPINION

KÖRNER, *Judge:** In his notice of deficiency, respondent determined that the Estate of Thomas G. Slater (decedent) was liable for an estate tax deficiency of $149,163. After concessions by both parties, we must decide whether gifts of stock in a corporation owning a family farm, given by decedent to his sons within 3 years of his death, should be included in and taxed as part of decedent's gross estate or

---

*By order of the Chief Judge, this case was reassigned from Judge Robert P. Ruwe to Judge Jules G. Körner III.

included in the tentative tax base and taxed as adjusted taxable gifts. We must also ascertain the fair market value of decedent's interest in a 14.5-acre parcel of land.

This case was submitted fully stipulated by the parties under Rule 122. The stipulation of facts and exhibits attached are incorporated by this reference. Petitioner's coexecutors are decedent's sons, Thomas G. Slater, Jr. and Robert R. Slater. They were residents of Virginia when the petition herein was filed.

Thomas G. Slater owned the Rose Hill Farm in Upperville, Virginia. Decedent lived on the farm for 34 years until his death on April 19, 1984, during which time he was responsible for its management. Decedent incorporated the farm in 1962, naming it Rose Hill Farm, Inc. (corporation); in 1966, subchapter S corporation treatment was elected.

Shortly after his wife died in 1983, decedent decided to make gifts of stock in the corporation to his two sons, Thomas G. Slater, Jr., and Robert R. Slater, so as to keep the farm in the family by avoiding onerous Federal estate tax burdens that might have required the family to liquidate it. Decedent hoped that he could transfer his stock in the corporation to his sons free of Federal gift tax, through the use of annual gift tax exclusions under section 2503(b)[1] and the unified gift and estate tax credit provided by section 2010 and 2505.

Decedent accordingly gave 825 shares of stock in the corporation to each of his two sons in 1983. Decedent gave 205 shares in the corporation to each son in 1984. Decedent paid no gift tax on these transfers to his sons.

Petitioner included 1,340 shares in the corporation that decedent owned at death on Schedule B (entitled "Stocks and Bonds") of decedent's Federal estate tax return; petitioner listed 2,060 shares of stock given to decedent's sons during 1983 and 1984 on Schedule G (entitled "Transfers During Decedent's Life"). Petitioner valued the entire 3,400 shares using the special use valuation method under section 2032A. Respondent agrees that, if the stock given to decedent's sons is taxed as part of decedent's gross

---

[1] All statutory references are to the Internal Revenue Code as in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

estate and not as adjusted taxable gifts, it may be valued according to section 2032A.

As stipulated by the parties, the value of decedent's 1,340 shares in the corporation was $37,051, and was properly valued under section 2032A. Respondent determined that the shares given to decedent's sons were not includable in the gross estate, but were includable and taxable in the tentative tax base as adjusted taxable gifts in the amount of $303,278. Sec. 2001(b)(1).

Decedent also owned a one-half interest in 14.5 acres of real estate in Loudoun County, Virginia, at the time of his death. He obtained this interest in lieu of receiving a real estate commission for selling a large tract of property to which the interest was attached. Petitioner claims that this parcel of land is located in a rural, mountainous area and that it has never been surveyed. Petitioner further claims that this parcel is worthless, due to its inaccessibility and mountainous terrain. It was not reported in decedent's estate tax return. Respondent determined that the fair market value of decedent's one-half interest was $3,000. Respondent points out that the assessed value of the land for local real estate tax purposes was $7,250 ($500 per acre) in 1984. Respondent claims that the assessment for local tax purposes is accurate in determining fair market value because a study conducted by the Virginia Department of Taxation in 1984 showed that the average assessed value for tax purposes in 1984 was 9.8 percent less than the average selling price.

Petitioner claims that the gifts of stock in the corporation that decedent made to his sons must be included in and taxed as a part of the gross estate. Petitioner further argues that the gifts of stock should be valued as qualified real property under section 2032A.

Respondent, on the other hand, contends that the gifts of stock to decedent's two sons are considered (but not included) in his gross estate only for purposes of determining whether real property held by decedent at his death qualifies for section 2032A special use valuation, by taking into account gifts of real property made within 3 years of decedent's death. Respondent argues that the donated stock does not qualify for relief under section 2032A and that

petitioner is liable for tax on these gifts, based on their fair market value at the date of gift, as adjusted taxable gifts.

Before being amended by the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, section 2035(a) required the inclusion in a decedent's gross estate of the value (at date of death) of all property which he had gratuitously transferred "in contemplation of death" within 3 years of his death. Gratuitous transfers were treated as having been made in contemplation of death "unless shown to the contrary." This was changed by the Tax Reform Act of 1976, which brought into the gross estate under section 2035 all gratuitous transfers (except generally those qualifying for the annual gift tax exclusion) made within 3 years of decedent's death.

The Economic Recovery Tax Act of 1981, (ERTA) Pub. L. 97-34, 95 Stat. 172, again amended section 2035 by providing that only certain types of gratuitous transfers are included in the gross estate if made within 3 years of decedent's death, namely, transfers described in sections 2036, 2037, or 2038, or those which consist of insurance on the life of decedent. Section 2035 was amended to provide generally that all other transfers made by a person dying after December 31, 1981, are not included in his gross estate. However, ERTA also added section 2035(d)(3), which states in relevant part the following:

SEC. 2035(d). DECEDENTS DYING AFTER 1981.—

(1) IN GENERAL.—Except as otherwise provided in this subsection, subsection (a) [including gifts made within 3 years in a decedent's gross estate] shall not apply to the estate of a decedent dying after December 31, 1981.

\* \* \* \* \* \* \*

(3) 3-YEAR RULE RETAINED FOR CERTAIN PURPOSES.—Paragraph (1) shall not apply for purposes of—

\* \* \* \* \* \* \*

(B) section 2032A (relating to special valuation of certain farm, etc., real property) \* \* \*

[Bracketed material added for explanatory purposes.]

Based on the plain wording of section 2035(d)(3)(B), the context in which it is written, and an analysis of the legislative history, we conclude that decedent's gifts of stock to his sons are not taxed as part of the gross estate;

instead, they are considered in the gross estate for the limited purpose of determining whether the stock owned by decedent at his death qualified for special use valuation. Respondent here concedes that it does. Secs. 2032A(b) and (g); sec. 20.2032A-3(b)(1), Estate Tax Regs. The stock that decedent gave to his sons must be included on petitioner's estate tax return as "adjusted taxable gifts" and must be valued according to its fair market value as of the date of gift under section 2001; the gifts are not eligible for section 2032A special use valuation.

Section 2032A, entitled "VALUATION OF CERTAIN FARM, ETC., REAL PROPERTY," is devoted to the *valuation* of certain real property, in a gross estate, that Congress decided to value according to its farm use, instead of its highest and best use. Section 2032A provides an elaborate set of requirements that must be met before real property qualifies for favorable special use valuation. Under section 2032A(a)(1), if the executor elects the application of section 2032A by filing the agreement described in section 2032A(d), the value of qualified real property included in decedent's gross estate that is devoted to farming is valued as a farm rather than at fair market value.

Section 2032A(b) sets forth criteria for determining whether property is qualified real property. Section 2032A(b)(1) provides, in relevant portion, that property is "qualified real property" only if: (A) 50 percent or more of the adjusted value of the gross estate consists of the adjusted value of real or personal property which (i) on the date of decedent's death, was being used for a qualified use by decedent or a member of decedent's family, and (ii) passes from decedent to a qualified heir; and (B) 25 percent or more of the adjusted value of the gross estate consists of the adjusted value of real property which meets certain requirements. Section 2032A(c) provides that, if within 10 years after decedent's death and before the death of the qualified heir, a qualified heir disposes of any interest in qualified real property, then there is imposed an additional estate tax.

To preclude deathbed transfers designed to qualify the estate for section 2032A relief, section 2035(d)(3)(B) considers in the gross estate gifts made within 3 years of

decedent's death for the purpose of determining whether real property held by decedent at his death qualified for section 2032A special use valuation.

The context in which section 2035(d)(3)(B) is written also requires that we reach the above result. Section 2035(d)(3)(A) states that the value of gifts made by decedent within 3 years are relevant "for purposes of—(A) section 303(b) (relating to distributions in redemption of stock to pay death taxes)."

Section 303 provides that where an estate is comprised in part of stock which has a value in excess of 35 percent of decedent's adjusted gross estate, amounts received in redemption of such stock will be treated as having been received in payment in exchange for the redeemed shares. Section 303 is a relief provision designed to facilitate the tax-free or nearly tax-free withdrawal of cash from a corporation whose stock forms a principal asset of decedent-stockholder's estate.

By constructively drawing back into the estate all gifts made by decedent within 3 years of his death, the statute attempts to avoid a situation where decedent gives away enough assets, except stock, shortly before his death so that the stock in his estate equals or exceeds 35 percent of his adjusted gross estate, artificially qualifying his stock for the relief prescribed by section 303(b).

Similarly, section 2035(d)(3)(C) provides that the value of gifts made by decedent within 3 years of his death are included in the gross estate "for purposes of—(C) subchapter C of chapter 64 (relating to lien for taxes)." This provision relates to the estate tax lien that applies to "the gross estate of the decedent for 10 years from the date of death." Section 2035(d)(3)(C) pulls into the gross estate those gifts made within 3 years of decedent's death to ensure that decedent may not give away all his assets in order to defeat tax collection efforts concerning his Federal estate tax liability. This section does not envision that such transfers will be taxed as part of the gross estate, only that they are included in the gross estate for collection purposes.

Taken as a whole, subparagraphs (A), (B), and (C) are exceptions to the general rule that gifts made after 1981 are not included in the gross estate; they apply only in limited

and special circumstances. Therefore, given the context in which section 2035(d)(3)(B) is grounded, our conclusion is reinforced, that decedent's gifts of stock to his sons are considered in his gross estate only for the purpose of ascertaining whether the stock decedent owned qualified for special use valuation under section 2032A.

Finally, an analysis of the legislative history behind section 2035(d)(3)(B) supports our conclusion. The Committee on Ways and Means explained the reasons for generally repealing the 3-year lookback for gifts:

> Under the law prior to the Tax Reform Act of 1976, gifts made in contemplation of death (other than gifts made more than 3 years before the decedent's death) were included in a decedent's gross estate to prevent deathbed transfers designed to avoid estate taxes. However, the prior law presumption that gifts made within 3 years of death were made in contemplation of death caused considerable litigation concerning the motives of decedents making gifts. As a result, Congress, in 1976, eliminated the problem by requiring the inclusion of all such gifts in a decedent's estate without regard to the motives of the decedent.
>
> Under the unified transfer tax system adopted in the Tax Reform Act of 1976, the inclusion in the gross estate of gifts made within 3 years of death generally has the effect of including only the property's post-gift appreciation in the gross estate (because the gift tax paid with respect to the transfer is allowed as a credit against the decedent's estate tax). The committee believes that inclusion of such appreciation [187] generally is unnecessary except for gifts of life insurance and certain property included in the gross estate pursuant to certain of the so-called transfer sections (secs. 2036, 2037, 2038, 2041, and 2042). However, gifts made within 3 years of death should be included in a decedent's gross estate to determine the estate's eligibility for a favorable redemption, valuation, and deferral provisions (under secs. 303, 2032A, and 6166) to preclude deathbed transfers designed to qualify that estate for such favorable treatment.
>
> [H. Rept. 97-201, 186-187 (1981), 1981-2 C.B. 352, 390.]

The Report continues with a brief explanation of then-new section 2035(d)(3):

> In addition, all transfers within 3 years of death (other than gifts eligible for the annual gift tax exclusion) *will be included for purposes of determining the estate's qualification for special redemption, valuation, and deferral purposes (under secs. 303, 2032A, and 6166)* and for purposes of determining property subject to the estate tax liens (under subchapter C of Chapter 64). [H. Rept. 97-201, 186 (1981), 1981-2 C.B. 390; emphasis added.]

The Conference Report states that the conference agreement follows the House bill. H. Rept. 97-215 (Conf.), 255 (1981), 1981-2 C.B. 481, 511.

If Congress had wanted to provide special use valuation relief for gifts, it could have clearly stated that gifts of qualifying real property made within 3 years of a decedent's death are included in the gross estate, valued according to section 2032A and taxed as part of the gross estate. Instead, Congress abolished the blanket inclusion in the gross estate of gifts made within 3 years, with certain exceptions, and included gifts in the gross estate only in limited circumstances, such as determining whether an *estate* is eligible for relief under section 2032A.

Petitioner argues that we should liberally interpret section 2035(d)(3)(B) to include the gifts of stock in decedent's gross estate for all purposes, not just for the narrow purpose for which it was designed. Petitioner contends that Congress' intent to preserve family farms should override any ambiguity in the statute. Unfortunately, it appears that petitioner's remedy in this case, if any, should be pursued through legislative channels instead of through litigation.

The gifts of stock in the corporation made by decedent to his sons are considered in decedent's gross estate only for the purpose of determining whether *his* stock in the company qualified for special use valuation under section 2032A. On the other hand, the stock belonging to the sons, for which no gift tax was paid, must be listed on decedent's final estate tax return as adjusted taxable gifts for purposes of determining the tax owed by decedent's estate. Sec. 2001(b). The gifts of stock must be valued at fair market value—they are not eligible for special use valuation. Although alleging error as to respondent's inclusion of the stock of decedent's sons as "adjusted taxable gifts" in the combined estate tax/gift tax computation now provided by section 2001, petitioner has alleged no error as to the valuation of such stock as adjusted taxable gifts, but contends only that such stock is properly includable in the gross estate and should be valued under the provisions of section 2032A. Having decided this issue in favor of respondent, his valuation of the sons' stock as adjusted taxable gifts (and allowing each gift for each year the

annual exclusion provided by section 2503(b)) must stand as unchallenged.

As to the value of the 14.5-acre parcel of land in Loudoun County, we think that petitioner has failed in its burden of proof to show error in respondent's valuation. It has not presented sufficient evidence to prove that the property was worthless at decedent's death. The valuation report prepared by decedent's son is self-serving and insufficient. Furthermore, respondent presented credible evidence that the parcel of land should be valued in excess of the fair market value that he determined for the property. We hold for respondent on this issue.

*Decision will be entered under Rule 155.*